**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **MARTIN M. STEVENS** | : | **DOCKET NO. 04-2351** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence in the record.

**BACKGROUND**

On January 2, 2003, Martin M. Stevens filed an application for a period of disability and disability insurance benefits. (Tr. 68-71). He alleged an inability to work since April 10, 2002, due to a herniated disk at L5-S1 and related surgery (Tr. 69, 75).[1] His claim was denied at the initial level of the administrative process. (Tr. 45, 49-53). Accordingly, Stevens requested and

---

[1] In the Disability Report, Stevens' wife wrote that her husband had been depressed a lot lately. (Tr. 77). Also, at the hearing, Stevens testified that he gets "so depressed." (Tr. 40). His attorney stated that Stevens was taking Lexapro for his emotional problems. (Tr. 36).

received a January 8, 2004, hearing before an Administrative Law Judge ("ALJ"). (Tr. 26-44).

However, by decision dated February 25, 2004, the ALJ found at Step Five of the sequential

evaluation process that Stevens was able to make an adjustment to other work in the national

economy, and thus was not disabled under the Act. (Tr. 10-19). Stevens appealed the ALJ's

decision to the Appeals Council. Yet, on September 8, 2004, the Appeals Council denied

Stevens' request for review, and the ALJ's decision became the final decision of the

Commissioner. (Tr. 3-5).

On November 17, 2004, Stevens sought review before this court. He contends that the

Commissioner erred because:

(1)     the ALJ improperly relied on the medical-vocational guidelines; and

(2)     the ALJ failed to fully and fairly develop the record, with resulting prejudice.

**STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining

whether the administrative decision is supported by substantial evidence and whether the

decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the

Commissioner's decision is supported by substantial evidence, the findings therein are

conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

Commissioner's decision is not supported by substantial evidence when the decision is reached

by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a

medically determinable physical or mental impairment that prevented him from engaging in any

substantial gainful activity for at least twelve consecutive months. *See*, 42 U.S.C. § 1382c(a)(A).

A finding of no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th

Cir. 1988)*.* The reviewing court may not reweigh the evidence, try the issues *de novo*, or

substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir.

1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step

process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2)

Can the impairment or combination of impairments be classified as severe? (3) Does the

impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If

so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to

perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§

404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the

process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps

place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to

establish that the claimant can perform other work. If the Secretary meets this burden, the

claimant must then prove that he cannot in fact perform the work suggested. *See  Falco v.*

*Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

Issues 1-2:

The ALJ found at Step Two of the sequential evaluation process that plaintiff suffered a

severe impairment caused by herniated nucleus pulposis at L5-S1 on the left and hypertension. (Tr. 13, 18). However, the ALJ concluded that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id.*

The ALJ next determined that Stevens retained the residual functional capacity for light work with occasional postural limitations. (Tr. 16, 18).[2] Plaintiff argues that the ALJ impermissibly relied on the medical-vocational guidelines because he suffers from non-exertional impairments – pain and the inability to stoop. By implication, this argument also challenges the ALJ's residual functional capacity assessment.

Plaintiff's treating physician, John Raggio, M.D., was the only physician of record to address his functional limitations. In an undated Attending Physician's Statement of Disability, Dr. Raggio indicated that Stevens could not climb, balance, stoop, kneel, crouch, crawl, reach, walk, sit, or stand. (Tr. 136). However, he was capable of lifting 20 lbs. maximum and 10 lbs. frequently. *Id.* Raggio noted that at that time, Stevens was not at maximum medical

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

improvement and remained unable to work. *Id.*[3]

In a December 16, 2002, letter, Dr. Raggio released Stevens to work with a permanent lifting restriction of no more than 25 pounds. (Tr. 126). However, he was not able to return to his former job at the bag plant. *Id.*

In a subsequent, undated Attending Physician's Statement of Disability, Dr. Raggio indicated that Stevens was able to return to work as of January 3, 2003. (Tr. 137). Raggio did not indicate whether Stevens had any physical limitations. *Id.* Instead, he merely wrote "see letter." *Id.* Presumably this reference was to his December 16, 2002, letter because later in the "Remarks" section of the statement he wrote "see letter dated 12/16/02." (Tr. 137). Of course, the December 16, 2002, letter contains no limitations other than the weight lifting restriction. (*See*, Tr. 126). Thus, it could be inferred that Dr. Raggio imposed no postural limitations on Stevens after he reached maximum medical improvement. This issue can be clarified on remand. *See*, discussion, *infra.*

Plaintiff next contends that the ALJ failed to fully and fairly develop the record by not obtaining a consultative examination to address suspected depression and a cognitive impairment due to reading and writing limitations. Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. §404.1517. However, the ALJ need not order a consultative examination at government expense "unless the record establishes that such an examination is necessary to enable the

---

[3] On October 22, 2002, Stevens had undergone a microlumbar laminotomy, foraminotomy, and diskectomy at L5-S1 on the left. (Tr. 108). Intraoperative findings revealed a herniated disk at L5- S1. *Id.* He was discharged the following day. *Id.*

administrative law judge to make the disability decision. *Pierre v. Sullivan*, 884 F.2d 799, 802

(5th Cir. 1989)(quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). "A consultative

evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a

suspicion concerning a non-exertional impairment." *Brock v. Chater*, 84 F.3d 726,728 (5th Cir.

1996). The Fifth Circuit has held that isolated comments by the plaintiff are not sufficient to

raise a suspicion of a non-exertional impairment. *Pierre*, 884 F.2d at 802; *Brock*, 84 F.3d at 728.

We are not convinced that plaintiff's reading and writing limitations necessarily sufficed

to compel a consultative examination. The same, however, cannot be said for plaintiff's

depression. The ALJ determined that Stevens had been diagnosed with depression. (Tr. 12).

Without the benefit of any prior medical assessment or evaluation, the ALJ applied the

psychiatric review technique, and found that Stevens' depression was a non-severe medically

determinable impairment. *Id.*[4] The ALJ's own findings confirm that plaintiff presented

sufficient ". . . evidence sufficient to raise a suspicion concerning a non-exertional impairment."

*Brock, supra.*

Nevertheless, to obtain reversal due to the ALJ's failure to adequately develop the record,

the claimant must also demonstrate resulting prejudice. *Brock, supra.* "To establish prejudice, a

claimant must show that he could and would have adduced evidence that might have altered the

result." *Id.* (Internal quotes omitted). Accordingly, plaintiff has adduced an April 6, 2004,

psychological evaluation and Medical Source Statement of Ability to do Work-Related Activities

---

[4] The regulations contemplate that the psychiatric review technique will be completed at the agency level of the administrative review process. 20 C.F.R. § 404.1520a.

(Mental) completed by Jerry L. Whiteman, Ph.D. (Pl. Appendix).[5]

In his report, Dr. Whiteman found that Stevens suffered from depression associated with his chronic back pain. *Id.* He further recommended medication and therapy for the condition. *Id.* The evaluation also included administration of the Wechsler Adult Intelligence Scale-III (WAIS-III) which resulted in a Full Scale IQ of 68, a Verbal IQ of 69, and a Performance IQ of 73. *Id.* Dr. Whiteman found that the test results indicated mild mental retardation. *Id.* As a consequence of plaintiff's impairments, Whiteman indicated that Stevens suffered marked limitations in several work-related activities. *Id.*

If credited, the impairments and related limitations recognized by Dr. Whiteman could materially affect the Commissioner's analysis by either producing a *per se* finding of disability at Step Three of the sequential evaluation process or resulting in a more restrictive residual functional capacity. *See e.g.*, 20 C.F.R. Subpart P, App. 1, Section 12.05(C).[6]

In sum, the instant ALJ's failure to fully and fairly develop the record compels a finding that he did not have sufficient facts before him to make an informed decision. *Pierre, supra.* Consequently, the resulting decision is not supported by substantial evidence. *Id.* For the foregoing reasons,

---

[5] The evaluation was completed less than two months after the ALJ's decision, and addressed symptoms that pre-existed the ALJ's decision. Thus, the evaluation appears to address the relevant time period.

[6] In another case, the Commissioner recently argued that evidence submitted by plaintiff to show prejudice resulting from the ALJ's failure to adequately develop the record required a showing that the evidence was new and that there was good cause for not producing the evidence earlier. *See, Lebleu v. Barnhart*, Civil Action Number 04-1611 [doc. # 19] (W.D. La.). While not countenancing this argument, we observe that these requirements are met here. Dr. Whiteman's evaluation is certainly "new." Moreover, plaintiff's failure to earlier produce the evidence is excused by our finding that the ALJ did not adequately develop the record.

It is RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of October, 2005.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE